502 S.E.2d 712

Frank M. ERWIN, Legal Guardian
of Jody R. Henson, an infant,
Plaintiff below,

v.

Jody R. HENSON, an infant,
Defendant below.

Dennis R. HENSON, Administrator of
the estate of Shirley A. Henson,
Plaintiff below,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, Defendant
below, Appellee.

Robin L. Godfrey, Guardian
ad Litem, Appellant.

No. 24181.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 20, 1998.

Decided May 8, 1998.

Robin L. Godfrey, Charleston, for Appellant.

Mark A. Atkinson, Dianna G. Canfield, Rose & Atkinson, Charleston, for Appellee.

STARCHER, Justice:

The appellant in this matter, Robin L. Godfrey ("Godfrey"), is an attorney who was appointed as guardian *ad litem* for the infants, Jody R. Henson and Jeremy Henson, in two cases before the Circuit Court of Kanawha County. The appointment was made pursuant to an insurance settlement offer in both cases. The settlement was offered as a result of a car wreck in which one of the infants was injured, and the mother of both children was killed.

The guardian *ad litem* represented the interests of the infants throughout the proceedings and requested his fees and costs at the final hearing. The guardian *ad litem* outlined all of the tasks he had undertaken as a result of his appointment and presented this information to the trial court in a proposed order in which the guardian *ad litem* also requested a certain fee. The trial court signed the order confirming the duties performed by the guardian *ad litem,* but crossed out the requested fee and interlineated a fee that was half the requested amount without an explanation.

The guardian *ad litem* appeals, claiming that the circuit court abused its discretion by reducing the guardian's requested fees by half.

## I.

### *Facts and Background*

On January 25, 1995, a car wreck occurred in St. Albans, West Virginia, when a car driven by Robert Bonar ("Bonar"), insured by State Farm Mutual Auto Insurance Company ("State Farm"), struck the side of a car driven by Dennis Henson ("Henson"), an uninsured motorist. Henson was traveling with his wife, Shirley Henson, and their two-year-old daughter, Jody Henson. While driving in an area of heavy traffic, Henson attempted to make a left turn across two lanes of traffic without the benefit of a green arrow turn light. Bonar, coming in the opposite direction, struck the Henson vehicle on the side, killing Shirley Henson and seriously injuring two-year-old Jody Henson.

After being released from the hospital, Jody Henson, along with her 11–year–old brother Jeremy Henson, began living with their maternal grandparents. An attorney was hired to represent the estate of Shirley Henson, with Dennis Henson as the administrator of her estate. The maternal grandfather, Frank Erwin, became the legal guardian of the children.[1]

State Farm, Bonar's insurance carrier, offered the policy limits of $50,000.00 for two-year-old Jody Henson's bodily injury claim, and $50,000.00 to the estate of Shirley Henson for the wrongful death claim, without admitting liability. A petition was filed with the Circuit Court of Kanawha County for permission to settle the infant Jody Henson's claim under *W.Va.Code*, 44–10–14 [1929].[2] At the same time a petition was filed on behalf of the estate of Shirley Henson requesting approval of the proposed settlement and for a distribution of the settlement funds pursuant to *W.Va.Code*, 55–7–6(b) [1992].[3] The circuit court appointed attorney Robin Godfrey ("Godfrey") as guardian *ad litem* for Jody R. Henson and Jeremy Henson in both cases.[4]

---

1. The County Commission of Kanawha County appointed Frank Erwin legal guardian of the children on January 30, 1996, approximately one year after the car wreck.

2. *W.Va.Code*, 44–10–14 [1929] provides, in part:

   In any case where an infant is injured . . ., the legal guardian of such infant may negotiate . . . for the settlement of any claim for damages therefor. But the [legal] guardian shall, when proceeding under this section, before making final settlement, file his petition in equity with the circuit court of the county, . . . in which he was appointed, for permission to settle such claim. . . . The court . . . shall appoint a guardian ad litem for the ward who shall answer the petition. Upon the hearing thereof, the court . . . may grant or refuse the petition by a proper order, as may seem just and proper. In case the court or judge shall grant the petition, there may be included in such order permission to the [legal] guardian to pay to his attorney such amount in connection with the settlement of the claim as in the discretion of the court or judge is reasonable and proper, taking into consideration the amount to be paid as damages, the necessities of the infant, the nature of the injury, the probability of recovery in case of suit, the difficulties involved in effecting the settlement, and such other matters as may properly have a bearing on the reasonable compensation to be allowed such attorney. In case the court or judge approves the prayer of the petition, the [legal] guardian may be authorized to settle and receive the amount of the settlement, and to execute to the tortfeasor a release therefor. . . .

   Also, for a discussion on appointing guardians *ad litem*, see *State ex rel. West Virginia Fire & Casualty Company v. Karl*, 199 W.Va. 678, 487 S.E.2d 336 (1997).

3. *W.Va.Code*, 55–7–6(b) provides for the distribution of "damages [settlement proceeds]" in a wrongful death action. It states, in part:

   In every such action for wrongful death the jury, or in a case tried without a jury, the court, may award such damages as to it may seem fair and just, and, may direct in what proportions the damages shall be distributed to the surviving spouse and children, including adopted children and stepchildren, brothers, sisters, parents and any persons who were financially dependent upon the decedent at the time of his or her death or would otherwise be equitably entitled to share in such distribution after making provision for those expenditures, if any, specified in subdivision (2), subsection (c) of this section [including reasonable funeral, hospital and medical expenses]. If there are no such survivors, then the damages shall be distributed in accordance with the decedent's will or, if there is no will, in accordance with the laws of descent and distribution as set forth in [*W.Va.Code*, 42–1–1]. . . .

4. One petition was filed for the bodily injury claim arising from the injuries sustained by infant Jody Henson, and a separate petition was filed for the wrongful death claims of the estate of Shirley Henson. These cases were later consolidated.

It appears from the record that a hearing was set for February 15, 1996, but was actually held on February 20, 1996. At the hearing, the court proceeded to hear evidence on the bodily injury claim of Jody Henson, but deferred action on the claim of the estate of Shirley Henson until a later date.[5]

At the hearing on the settlement of Jody Henson's claims, the guardian *ad litem*, Godfrey, filed a motion for a stay of the case proceedings with the circuit court due to the actions of Henson. Godfrey notified the court that while the children had resided with their maternal grandparents, the father of the children had apparently been taking the children's social security benefits and using the money for his own benefit.[6] In his motion, Godfrey further set forth his belief that Henson and the grandparents had entered into an agreement by which the grandparents would be allowed to keep the children without interference from Henson, with Henson being permitted to retain the children's social security benefits. According to the guardian *ad litem*, it was only when settlement of the claims became imminent that Henson began visiting his children on a frequent basis. He ultimately removed the youngest child, Jody, from the home of the grandparents.

Because of the guardian *ad litem's* concern for the children and his suspicion that Henson's primary interest in the children was to secure the children's benefits for his personal use, in his motion to stay the proceedings the guardian *ad litem* requested that the court: (1) order Henson to return the child to the grandparents; (2) direct Henson not to remove either child from the care of their grandparents except for limited visitation; (3) order Henson to remove himself as representative payee of the social security benefits for the children; (4) remove Henson as the administrator of Shirley Henson's estate; (5) require Henson to post bond to secure his compliance with the court's order; and, (6) set a hearing for distribution of the proceeds of the settlements, conditioned upon the immediate return of Jody to her grandparents.

Also, because the guardian *ad litem* did not believe that Henson should share in the wrongful death benefits resulting from Shirley Henson's death, negotiations relating to the distribution of the settlement proceeds for the claims of Shirley Henson's estate failed. On the day set for the hearing, the trial court first approved the settlement offer from defendant insurance company, and then proceeded with a bench trial on the issues relating to "the conduct of Dennis R. Henson, a proposed beneficiary, towards the decedent prior to her death."

The court determined that Henson was "primarily at fault" for the accident, and therefore was not permitted to share in the insurance proceeds, except for his medical bills.[7] The insurance proceeds for the wrongful death claim were divided among the three children of the decedent.[8]

The guardian *ad litem*, in his representation of the two infant children in both claims, recognized that the children would receive social security benefits until the age of majority. Therefore, the guardian *ad litem* went to extensive efforts to ensure that the infant children's money was to be put into annuities, which would begin providing each a monthly income when each of the children reached the age of 18 years old.

---

5. The trial court bifurcated the consolidated actions. The circuit court order reflects that the settlement for the bodily injury action of Jody Henson was approved at the hearing on February 20, 1996, and the issues involving the claim of the estate of Shirley Henson were heard at a bench trial on April 29, 1996. A single order covering both the hearing on the claims of Jody Henson, and the trial on the claims of the estate of Shirley Henson was not entered until July 29, 1996.

6. The guardian *ad litem* informed the circuit court that Henson had received over $11,000.00 in social security benefits that belonged to the children but had given the grandparents only $500.00 or $600.00.

7. In the order the court stated that because it found Henson "primarily at fault" for the accident and for "other reasons" which the court did not specify, Henson was entitled to no distribution except for his medical bills.

8. Shirley Henson, in addition to the children represented by the guardian *ad litem*, had a third child who was an adult at the time of the accident.

Guardian *ad litem* Godfrey also prepared releases and a proposed order in which he set forth the work he had performed on behalf of the two infant children, and his fees and costs. Godfrey requested payment at a rate of $100.00 per hour. He provided a detailed statement indicating that he worked a total of 83.6 hours on the case.

The trial court, after several requests by the guardian *ad litem*, accepted and signed the proposed order which stated that the rate of payment was reasonable, and that the work performed was reasonable and necessary. However, without explanation, the court cut in half the total amount the guardian *ad litem* was to be paid.[9] This appeal followed.

## II.

### *Discussion*

We have previously discussed in detail the duties of a guardian *ad litem* in abuse and neglect proceedings. *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993).[10] However, we have never discussed the unique role of a guardian *ad litem* who has been appointed to represent the interests of an infant for an insurance settlement.

America's courts have generally adopted the English common law regarding the guardianship of infants and those deemed incompetent. Under English common law, the King was entrusted with protecting infants and incompetents.[11] When it was determined that a guardian needed to be appointed to represent an infant, the King would issue a letter patent. This duty was eventually assumed by the Chancery Courts, which gave protection to infants who were deemed to lack the discretion necessary to manage their own interests.[12]

American courts quickly adopted the policy of appointing guardians to protect the interest of minors, and today representation in the form of a guardian *ad litem* is provided for children in certain civil and criminal proceedings.[13] West Virginia has likewise followed the common law and allows for the appointment of guardians *ad litem* when an incompetent person, an infant, or a convict requires representation. *W.Va.Code*, 56-4-10 [1923].[14]

---

9. Godfrey also asserted that his costs were $645.57. This amount was left intact and is not at issue here.

10. We said in *In re Jeffrey R.L.*:

    ... each child in an abuse and neglect case is entitled to effective representation of counsel. To further that goal, *W.Va.Code*, 49-6-2(a) [1992] mandates that a child has a right to be represented by counsel in every stage of abuse and neglect proceedings. Furthermore, Rule XIII of the *West Virginia Rules for Trial Courts of Record* provides that a guardian *ad litem* shall make a full and independent investigation of the facts involved in the proceeding, and shall make his or her recommendations known to the court. Rules 1.1 and 1.3 of the *West Virginia Rules of Professional Conduct*, respectively, require an attorney to provide competent representation to a client and to act with reasonable diligence and promptness in representing a client.

    190 W.Va. at 39, 435 S.E.2d at 177.

    For a more detailed explanation of the duties of a guardian *ad litem* in abuse and neglect cases see Appendix A in *Jeffrey*.

11. According to William Blackstone, a scholar of English laws:

    [The King] is the general guardian of all infants, idiots, and lunatics; and has the general superintendence of all charitable uses in the kingdom. And all this, over and above the vast and extensive jurisdiction which he exercises in his judicial capacity in the court of chancery: wherein, as in the exchequer, there are two distinct tribunals; the one ordinary, being a court of common law; the other extraordinary, being a court of equity.

    3 William Blackstone, *Commentaries on the Laws of England*, 47 (1768).

12. *See* Ellen K. Solender, *The Guardian Ad Litem: A Valuable Representative or An Illusory Safeguard?*, 7 Tex. Tech L.Rev. 619 (1976); *see also* Note, *Guardianship in the Planned Estate*, 45 Iowa L.Rev. 360 (1960).

13. *See* Jennifer L. Anton, Comment, *The Ambiguous Role and Responsibilities of a Guardian Ad Litem in Texas in Personal Injury Litigation*, 51 SMU L.Rev. 161 (1997).

14. A guardian *ad litem* may also be appointed in proceedings to sell, lease or mortgage an infant's, an incompetent's, or a convict's land. *W.Va. Code*, 37-1-3, 37-1-12 [1949]. A guardian *ad litem* should also be appointed for adult respondents in abuse and neglect proceedings when they are involuntarily hospitalized for mental illness. Syllabus Point 3, *In re Lindsey C.*, 196 W.Va. 395, 473 S.E.2d 110 (1995). A guardian *ad litem* will also be appointed in certain circum-

The role of the guardian *ad litem* is extremely valuable in our judicial system. Without a guardian, those who most need justice and protection may be denied it. To properly fulfill his or her role, a guardian *ad litem* must be a vigorous advocate for the client, but must thoroughly investigate the matter before the court, to determine what would be in the client's best interest—often without assistance from the client.[15]

We note with approval that the guardian *ad litem* in this matter performed those tasks demanded of his position in a professional and thorough manner. He protected his clients from those who might take financial advantage, examined various tax implications of the proffered settlements, ensured that social security benefits were being properly utilized, and established annuities for his clients to ensure their financial security. We would hope that all attorneys assigned to the role of guardian *ad litem* would perform their responsibilities with as much dedication and professionalism.

We now turn our attention to the specific issue before this Court, which is the appropriateness of a circuit court reducing the requested fees of the appointed guardian *ad litem*, without providing reasons why the requested fees were reduced.

We have previously addressed other situations in which attorney fees are paid by a third party, either by a government agency or a private entity.[16] We have also established factors which must be examined when an attorney is seeking fees from a third party in civil cases. Those factors were set forth in *Aetna Casualty & Surety Co. v. Pitrolo;*

Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Syllabus Point 4, *Aetna Casualty & Surety Co. v. Pitrolo,* 176 W.Va. 190, 342 S.E.2d 156 (1986).

Similar language providing for the payment of attorneys' fees for the legal representation of infants in cases where a court sanctioned settlement is sought is found in *W.Va.Code,* 44-10-14 [1929]. This provision provides that, in determining the attorney's fee (as opposed to a guardian *ad litem* fee), the trial court shall:

... [take] into consideration the amount to be paid as damages [to the infant], the necessities of the infant, the nature of the injury, the probability of recovery in case of suit, the difficulties involved in effecting the settlement, and such other matters as may properly have a bearing on the rea-

stance to represent infants in paternity suits. *See Quesinberry v. Quesinberry,* 191 W.Va. 65, 443 S.E.2d 222 (1994). *See also* note 2, *supra.*

**15.** *See* Chris A. Milne, *The Child's Tort Case: Ethics, Education and Social Responsibility,* 30 Suffolk U.L.Rev. 1097 (1997).

**16.** *See, e.g. Statler v. Dodson,* 195 W.Va. 646, 466 S.E.2d 497 (1995) (attorney for a pretermitted infant seeking fees for their services); *Brown v. Thompson,* 192 W.Va. 412, 452 S.E.2d 728 (1994) (attorney for an inmate working on civil rights matter); *Sowa v. Huffman,* 191 W.Va. 105,

443 S.E.2d 262 (1994) (what services will be compensated for when guardian *ad litem* represents an individual ruled incompetent); *Quesinberry v. Quesinberry,* 191 W.Va. 65, 443 S.E.2d 222 (1994) (guardian *ad litem* appointed to represent infant in paternity suit); *Judy v. White,* 188 W.Va. 633, 425 S.E.2d 588 (1992) (attorney appealing reduction of fees in criminal matter); *Aetna Casualty & Surety Co. v. Pitrolo,* 176 W.Va. 190, 342 S.E.2d 156 (1986) (attorney seeking fees from insurance company which refused to defend insured without justification).

sonable compensation to be allowed to such attorney.

The fee of a guardian *ad litem* should be given the same sort of consideration.

In the instant case, the circuit court's order examined the factors set out in *Aetna Casualty, supra,* and found that: (1) this matter required substantial work; (2) that there were difficult questions presented in this matter; (3) particular skill was required of the guardian; (4) the attorney was precluded from other work due to the amount of time expended on this case; (5) the request of $100.00 per hour was reasonable, due to the difficult work involved; (6) there was no previous fee agreement so this factor was not relevant; (7) there were time limitations imposed on the attorney; (8) the amount involved in the case was substantial; (9) the attorney has been practicing law for over 20 years; (10) that due to the difficulty involved, this would not be a very "desirable case;" (11) due to the age of the children, this case was made even more difficult; and (12) "given the amount of work and the difficulty of the case, ... the fees proposed by the guardian ad litem are reasonable in light of similar case[s]." After finding all of these facts, the trial court without explanation reduced the attorney's requested fees in half.

■ We believe the factors, from the *Aetna Casualty* case, except for factor number six, should be examined when determining fees for a guardian *ad litem.* Therefore, we hold that in cases where a trial court appoints an attorney as a guardian *ad litem* to represent the interests of an infant, in determining the appropriate fee to be paid to the guardian *ad litem,* the trial court shall consider the factors enunciated in Syllabus Point 4 of *Aetna Casualty & Surety Co. v. Pitrolo,* 176 W.Va. 190, 342 S.E.2d 156 (1986), except for factor number six.

■ This Court recognizes that the trial court has the unique opportunity to observe the quality, quantity, and necessity for the legal work pursued by a guardian *ad litem* on behalf of an infant. As such this Court will give deference to the trial court in the determination of the amount of attorney's fees to be allowed to a guardian *ad litem.*

Nevertheless, when a fee is requested of the trial court by a guardian *ad litem,* as the trial court should have a standard to review the request, *supra,* the guardian *ad litem* should not be without recourse to challenge the trial court's award.

In *Judy v. White,* 188 W.Va. 633, 425 S.E.2d 588 (1992), an attorney who had been appointed to represent an indigent in a criminal appeal pursuant to *W.Va.Code,* 29–21–13a [1990] had his fees reduced without explanation. In *Judy* we held that when a circuit court reduces the amount of a fee requested by an attorney who was appointed by the court to represent an indigent criminal defendant, the trial court must provide some explanation for the reduction. This explanation will provide the attorney a meaningful opportunity to address the specific concerns of the court and present evidence to support his claim.

■ We believe the reasoning in *Judy, supra* should also apply to fee requests made by guardians *ad litem* in civil cases. Therefore, trial courts must give an explanation on the record for any order reducing the amount of fees or costs claimed by an attorney appointed as a guardian *ad litem* by the court. The explanation must provide enough guidance for the guardian *ad litem* to respond meaningfully by petitioning the trial court for reconsideration of the reduction order and allowing the attorney to submit additional supporting written documentation or explanation for the fees and costs. The trial judge's award is reviewed under an abuse of discretion standard.

### III.

#### *Conclusion*

We therefore reverse and remand this matter to the circuit court for reconsideration in accordance with this opinion.

Reversed and Remanded.