# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**March 25, 2024**

C. CASEY FORBES, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**VICKIE L. HYLTON,**
**Guardian ad Litem for Respondent Below, Petitioner**

**v.) No. 23-ICA-222**      (Fam Ct. Fayette Cnty. No. FC-10-2020-D-295)

**ANDREW P.,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Vickie L. Hylton appeals the Family Court of Fayette County's April 25, 2023, Final Divorce Order and Order on Reconsideration of Hylton Fees. Respondent Andrew P.[1] did not participate in this appeal.[2] The issue on appeal is whether the family court erred by significantly reducing Ms. Hylton's hourly billing rate and amount of fees for the guardian ad litem ("GAL") services she provided below based upon its determination that her hourly rate was unreasonable considering some of the services she provided.[3]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the family court's decision but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure for reversal in a memorandum decision. For the reasons set forth below, the family court's orders are reversed, and this case is remanded for further proceedings consistent with this decision.

---

[1] Consistent with the long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R.,* 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2] Vickie L. Hylton is self-represented.

[3] Below, Ms. Hylton was appointed as GAL for Jenny P. who is not a party to this appeal.

1

On December 21, 2020, Andrew P. filed a divorce petition against Jenny P. in the Family Court of Fayette County. Jenny P. had a history of alcohol abuse, anger, and violence issues which affected her relationship with her children. Therefore, early in the divorce proceedings, the family court awarded Andrew P. primary custody of the children and granted Jenny P. supervised visitation. Jenny P. was also ordered to undergo a psychological evaluation and alcohol assessment, to utilize Soberlink alcohol monitoring, and to drug screen three times a week.

On March 11, 2021, the family court appointed a GAL for the couple's minor children. The family court set the hourly billing rate for the children's GAL at $287.50.[4] After Jenny P. arrived at supervised visits visibly intoxicated with slurred speech, the children's GAL requested the family court appoint a GAL for Jenny P., concerned about her diminished capacity and inability to act in her own best interest.

On December 8, 2021, the family court held a hearing where Jenny P. was awarded $20,000.00 in lieu of temporary alimony.[5] Evidence was adduced regarding Jenny P.'s competency based upon her failure to comply with court orders. Counsel for Andrew P. moved the family court to appoint a GAL for Jenny P. due to her suspected incompetency and failure to attend to her affairs. Counsel for Jenny P. objected and argued that Jenny P. was competent and wholly capable of attending to her affairs. However, based on the evidence adduced, the family court found that Jenny P. lacked the ability to protect her own interests, was unable or unwilling to conduct herself appropriately, and the appointment of a GAL was necessary.

On December 14, 2021, the family court appointed Ms. Hylton as GAL for Jenny P. The order stated, in part,

> the [c]ourt has determined the need for a [GAL] to protect the interests of the Respondent, [Jenny P.], and investigate substantial questions raised concerning the competency of [Jenny P.] to conduct her business affairs and to conform her behavior to the standard of conduct required of her by the [c]ourt, and should the [GAL] find it appropriate to do so, the [GAL] shall act in the best interests of [Jenny P.] in resolving the issues presented in this matter. It is accordingly, ORDERED and ADJUDGED that Vickie Hylton, an attorney practicing before the bar of this Court shall be appointed as [GAL] to do all things necessary to protect the best interest of said Respondent, [Jenny P.]

---

[4] The hourly fee was based upon the assets of Jenny P. and Andrew P. and reduced to writing in the family court's May 24, 2021, order.

[5] The parties had substantial marital assets.

2

At the onset of Ms. Hylton's appointment, Jenny P. began emailing and calling Ms. Hylton frequently. So much so that on numerous occasions, Ms. Hylton instructed Jenny P. to only call or email when necessary because Ms. Hylton was billing her for the time spent responding to each form of communication. Despite this instruction, Jenny P. continued to regularly send Ms. Hylton several emails on a daily and nightly basis, including instances where Jenny P. would e-mail Ms. Hylton multiple times within a twenty-four-hour period. This conduct continued throughout Ms. Hylton's appointment.

On July 22, 2022, the family court held a telephonic hearing during which the family court notified Jenny P. that she would need to hire a new attorney because her current attorney was suspended from the practice of law.[6] Also at the hearing, Ms. Hylton notified the family court that although Jenny P. was difficult to deal with and consistently made bad decisions, she was not incompetent and was not in need of a GAL; further, Ms. Hylton had not seen any report that Jenny P. was incompetent and unable to conduct her own affairs. Ms. Hylton informed the court that she had made numerous requests for Jenny P. to sign HIPAA releases so that she could gather such medical information in relation to her competency but was unsuccessful due to Jenny P.'s defiant behavior. Jenny P. was employed, self-supported, and living independently. Thus, Ms. Hylton requested to be relieved from her appointment in the case. The children's GAL objected to Ms. Hylton's withdrawal because a GAL was needed to protect Jenny P.'s best interests due to her incapability of making good choices. The family court denied Ms. Hylton's request to be relieved. However, importantly, the following colloquy took place during the July 22, 2022, hearing:

> FAMILY COURT: I'm sorry, Ms. Hylton, your question about your fees?
>
> HYLTON: I was going to ask that it be set at the same rate as [the children's GAL] unless the court advises otherwise.
>
> FAMILY COURT: That sounds right to me.

By order entered July 25, 2022, the family court denied Ms. Hylton's request to be relieved as Jenny P.'s GAL until Jenny P.'s medical, mental health, and psychiatric records were received by the court. Jenny P. was ordered to execute and deliver a consent and release of medical records to the children's GAL. The family court's oral approval of Ms. Hylton's GAL fee at $287.50 per hour was not incorporated into the written order.

---

[6] Jenny P.'s then attorney was Scott Elswick, who was suspended from practicing law by order entered on May 5, 2022, by the Supreme Court of Appeals of West Virginia. Jenny P. went through at least three attorneys from December 2020 until the filing of this appeal.

On October 28, 2022, Ms. Hylton renewed her request to be relieved from the case, which was granted by the family court. Ms. Hylton filed a detailed invoice with the court on November 8, 2022. Ms. Hylton billed for 45.4 hours of services from December 14, 2021, through October 28, 2022. She also billed $15.10 for 151 pages of copies, $2.65 for the postage of five checks, and $94.08 for 168 miles traveled regarding Jenny P.'s medication. The final total of Ms. Hylton's GAL fee was $13,164.33.

The family court held a final hearing on the divorce petition on February 10, 2023, where Jenny P. failed to appear in person. The court telephoned Jenny P., who informed the court that she was unable to attend the final hearing due to a leg injury. Notably, the court spent seventeen minutes of the hearing arguing with Jenny P. and appeared exasperated with her. The family court permitted Jenny P. to attend the hearing telephonically. After a ten-minute recess, Jenny P. would not answer the family court's phone calls and apparently chose not to participate any further in the final hearing.

At the conclusion of the final hearing, the family court inquired whether counsel for Andrew P. had seen Ms. Hylton's detailed invoice regarding her fee.[7] Counsel for Andrew P. stated that the fees were likely appropriate, especially if Jenny P. phoned and emailed "incessantly" to Ms. Hylton demanding immediate responses like she "incessantly" emailed her first attorney; thus, there were no objections to Ms. Hylton's invoice or fee.

On February 21, 2023, the family court entered a memorandum of the court's final rulings and ordered counsel to incorporate the findings into a proposed final divorce order. The memorandum reduced Ms. Hylton's total fee of $13,164.33 to $6,921.83. Specifically, the family court found that Ms. Hylton's billing rate was unreasonably higher than the amount expected and ordered her to be paid $150.00 per hour instead of $287.50. However, the family court adopted the children's GAL fee of $14,923.88 at $287.50 per hour.

On March 3, 2023, after receiving the family court's memorandum, Ms. Hylton filed a motion for the family court to reconsider its reduction of her fees. The court held a hearing on the motion and on April 25, 2023, the family court entered an order denying Ms. Hylton's motion to reconsider. The family court found that there was no evidence that Jenny P. was "incompetent to conduct her own business affairs or these proceedings." The court also found that Ms. Hylton did not differentiate billing between non-lawyer functions and lawyer functions, and some of the services rendered should have been completed by a paralegal or messenger.

On April 25, 2023, the family court entered a final divorce order. Jenny P. was awarded an equitable distribution of the marital assets in the amount of $179,726.00 and

---

[7] Ms. Hylton was not present for this hearing, being relieved from her duties as GAL in October 2022.

Andrew P. was awarded $367,424.00. To equalize distribution, the court awarded Jenny P. a cash amount of $91,349.00. The cash amount was used to pay for certain expenses Jenny P. incurred during the litigation. Among other things, the cash amount paid the children's GAL fees and Ms. Hylton's GAL fees. The family court awarded the children's GAL fee of $14,923.88 at $287.50 per hour and Ms. Hylton a fee of $6,921.83 at $150.00 per hour. This appeal followed.

When reviewing the order of a family court, we apply the following standard of review:

> "In reviewing . . . a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syl., [in part,] *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

*Amanda C. v. Christopher P.*, 248 W. Va. 130, 133, 887 S.E.2d 255, 258 (Ct. App. 2022); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

The only issue before this Court concerns the discretion of a family court to alter the amount of attorney's fees submitted for approval by a GAL appointed by the court. On appeal, Ms. Hylton asserts several assignments of error, which for purposes of this appeal have been consolidated into one issue.[8]

Ms. Hylton argues that the family court abused its discretion when her previously approved fee was unilaterally and comprehensively reduced by the family court. She further contends that the family court did not scrutinize any other billing and ordered all other attorneys involved in the case to be paid in full due to Jenny P.'s misconduct. In support of her argument, Ms. Hylton avers that the family court erroneously reduced her fee because she did not hire staff to perform some of her services, which the court said were "messenger's functions" and should have billed at a reduced rate. Further, she contends that the family court erred by reducing her fee with no calculation evidencing the justification for such reduction.

---

[8] It appears that all of Ms. Hylton's assignments of error present a single issue. *See generally Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (allowing consolidation of related assignments of error).

"The role of the guardian ad litem is extremely valuable in our judicial system. Without a guardian, those who most need justice and protection may be denied it." *Erwin v. Henson*, 202 W. Va. 137, 142, 502 S.E.2d 712, 717 (1998). To properly perform this role, the guardian must advocate vigorously for the client, "but must thoroughly investigate the matter before the court, to determine what would be in the client's best interest—often without assistance from the client." *See id.* (Citing Chris A. Milne, *The Child's Tort Case: Ethics, Education and Social Responsibility*, 30 Suffolk U. L.Rev. 1097 (1997)).

The Supreme Court of Appeals of West Virginia has held that when a guardian ad litem is appointed to represent an adult, that guardian is charged with the duty "to provide competent representation to . . . [their] client, and to act with reasonable diligence and promptness in representing . . . [their] client." *In re Jeffrey R.L,* 190 W. Va. 24, 39, 435 S.E.2d 162, 177 (1993). Here, the record indicates that Ms. Hylton fulfilled her responsibilities as Jenny P.'s GAL.

In *Judy v. White*, 188 W. Va. 633, 425 S.E.2d 588 (1992), an attorney who had been appointed to represent a criminal defendant had his fees reduced without any explanation. The court in *Judy* held that an explanation must be provided when a court reduces the fee of an attorney appointed by the court. *Id*. at 639, 425 S.E.2d at 594. The reasoning for the requirement was outlined in *Erwin,* which held that the "explanation will provide the attorney a meaningful opportunity to address the specific concerns of the court and present evidence to support his claim." *Erwin*, 202 W. Va. at 143, 502 S.E.2d at 718.

In *Erwin*, a GAL was appointed to represent minors in the settlements of personal injury and wrongful death claims. The lower court "accepted and signed the proposed order which stated that the rate of payment was reasonable, and that the work performed was reasonable and necessary." *Id*. at 141, 502 S.E.2d at 716. Nonetheless, the court reduced the GAL's fees in half without explanation. *Id*. The *Erwin* Court utilized the factors set forth in Syllabus Point 4 of *Aetna Casualty & Surety Company v. Pitrolo*, 176 W. Va. 190, 342 S.E.2d 156 (1986) for lower courts to consider when an attorney's fee is not based on a fee arrangement between the attorney and his client, which are as follows:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Aetna Cas. & Sur. Co.*, 176 W. Va. at 196, 342 S.E.2d at 162. In *Erwin*, the lower court examined the *Aetna Casualty* factors and found them all to favor the GAL, yet still reduced

6

the GAL's fees by half. The Supreme Court of Appeals of West Virginia reversed the lower court's decision and held that when a court "appoints an attorney as a guardian ad litem to represent the interests of an infant, in determining the appropriate fee to be paid to the guardian ad litem, the trial court shall consider the factors enunciated in Syllabus Point 4 of *Aetna Casualty & Surety Co. v. Pitrolo*, 176 W. Va. 190, 342 S.E.2d 156 (1986), except for factor number six." *Erwin*, 202 W. Va. at 143, 502 S.E.2d at 718. It further stated, "when a fee is requested . . . by a guardian ad litem . . . [the] court should have a standard to review the request." *Id*.

Though we recognize that *Erwin* and *Aetna Casualty* did not involve court-appointed GALs in family court proceedings, we find the requirement for courts to have a standard when determining a GAL's fee to be necessary in family courts as well; particularly when the court reduces such fee that it had previously approved.

Here, the family court reduced Ms. Hylton's bill by almost half with insufficient explanation. There were no objections by the parties to her fee or to her detailed invoice statement. The children's GAL billed at the same hourly rate as Ms. Hylton and the record below does not show any inquiry into whether her billed services included "messenger" or "paralegal" functions. Nonetheless, the court ordered Jenny P. to pay 100 percent of the children's GAL fee in the amount of $14,923.88 finding that, "the need for a [GAL] result[ed] from the behaviors and misconduct by the Respondent [Jenny P.]"[9]

The record indicates that the family court based its comprehensive fee reduction partly on the fact that Jenny P. was never found incompetent to conduct her own business affairs or to participate in the proceedings.[10] However, the family court appointed Ms. Hylton as Jenny P.'s GAL because there were "substantial questions raised concerning the competency of [Jenny P.] to conduct her [own] business affairs;" there were also questions regarding whether Jenny P. was competent "to conform her behavior to the standard of conduct required" by the family court. The family court found that Ms. Hylton billed for non-legal activities. Specifically, the court found that 3.2 hours involving Ms. Hylton traveling to and from a pharmacy to pick up and drop off Jenny P.'s medication while she was in rehab was a "messenger's function" and Ms. Hylton's "failure to differentiate functions . . . result[ed] in unreasonable and excessive billings." Nevertheless, the order of appointment required Ms. Hylton "to do all things necessary to protect the best interest of

---

[9] For the same reason, the family court ordered Jenny P. to pay 100 percent of the children's therapy expenses. Additionally, the family court ordered Jenny P. to pay forty percent of Andrew P.'s retained attorney fees "due to her misconduct, behavior, and lack of diligence."

[10] This finding of the family court does not excuse Ms. Hylton's performance of her duties as GAL or her payment for those services.

said Respondent [Jenny P.]" Moreover, we note that Ms. Hylton requested to be relieved of her GAL appointment in July 2022, but the family court denied her motion, which allowed additional services and fees to accrue.

Here, the family court comprehensively reduced Ms. Hylton's GAL fees because *some* of her services were considered non-lawyer services, yet the record does not provide sufficient detail or clarity regarding the specific line items in the invoice that were reduced. Additionally, the family court never required either GAL to differentiate between services provided for billing purposes.[11] To give the GAL the opportunity to explain why these functions were proper for an attorney to perform and why they were proper to be charged at an attorney rate, in evaluating a GAL fee request, and before reducing Ms. Hylton's invoice, the family court must first analyze the *Erwin* factors and subsequently give notice to Ms. Hylton of which services are deemed non-lawyer functions, to reduce the fee for those services accordingly. Thus, we find that the family court abused its discretion when it comprehensively reduced Ms. Hylton's GAL fees without first providing supporting findings of facts and conclusions of law regarding the specific services warranting a reduction of fees.

Accordingly, we reverse the Family Court of Fayette County's April 25, 2023, orders as it pertains to Ms. Hylton's fees, and remand the case for further proceedings consistent with this decision.

Reversed and Remanded.

**ISSUED:** March 25, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

---

[11] To prevent confusion in future cases, we encourage family courts to incorporate language into their GAL appointment orders to clarify if the court requires a GAL to provide certain designations of their services for billing purposes, especially when a case involves two court-appointed GALs.

8